# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| MARK BOATWRIGHT, | ) |
| Plaintiff, | ) )  ) |
| v. | ) ) CIVIL ACTION NO. 5:17-CV-34(MTT) |
| ASPEN PRODUCTS, INC., | ) ) ) |
| Defendant. | ) ) |

## ORDER

Defendant Aspen Products, Inc. has moved for summary judgment on the disability employment discrimination claims of Plaintiff Mark Boatwright, who is proceeding pro se. Doc. 19. As discussed below, the motion (Doc. 19) is **GRANTED**, and Boatwright's claims are **DISMISSED with prejudice**.

## I. FACTS[1]

Boatwright began working as a machine operator for Aspen Products, a manufacturer of paper plates and cups, on June 1, 2015. Docs. 21 at 17:7-13, 18:19-22; 22 ¶¶ 2-3. Around Friday, June 19, 2015, Boatwright injured his ankle. Docs. 21 at 52:15-22; 21-1 at 49. On Monday, June 22, Brian Lilly, Aspen Products's plant manager, and Jay Kerr, Aspen Products's production manager, sent Boatwright to Macon Occupational Medicine to have the ankle examined. Docs. 21 at 52:24-53:11; 21-1 at 49; 22 ¶ 4. Boatwright was diagnosed with an ankle sprain and released for restricted work duty; specifically, Boatwright was instructed not to lift, push, pull, carry

---

[1] Unless stated otherwise, the facts are undisputed. Where the facts are disputed, on summary judgment, the Court must draw "all justifiable inferences" in favor of Boatwright, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

over 15 pounds, or walk or stand for more than 20 minutes at a time, and he was told to take breaks to ice and elevate the injured ankle. Doc. 21-1 at 49.

Boatwright expressed his desire to work in his normal machine operating capacity while using crutches, but Kerr and Lilly denied this request. Docs. 21 at 28:18-22, 29:2-12, 30:5-16; 22 ¶ 5. Lilly told Boatwright that he could not work with crutches; Kerr swore in an affidavit that, due to the safety concerns arising from heavy machinery, Aspen Products "typically do[es] not recommend employees"—machine operators in particular—"that need crutches or wheelchairs to continue working on the production floor" and that a "light duty work station is something we have always had available to accommodate employees." Docs. 21 at 30:14-16, 32:8-13; 22 ¶ 14. Accordingly, Aspen Products instructed Boatwright that light duty work would be available for him, instead. Doc. 22 ¶ 5.[2] Kerr swore in an affidavit, and Boatwright does not dispute, that the light duty work, used for employees with work restrictions, entailed modified duties at a chair and table, usually counting, inventorying, or inspecting product. Doc. 22 ¶¶ 13-14.

But Boatwright did not go to work on June 23, instead calling in to his supervisor and reporting that he could not work because of his ankle. Docs. 21 at 59:15-21, 62:1-8; 22 ¶ 6. On June 24, he requested a second opinion regarding his ankle. Docs. 21 at 53:23-54:9; 22 ¶ 6. An appointment with a different doctor was made; Boatwright called in again the nights of June 24 and 25; and Boatwright visited Ortho Georgia on June 26. Docs. 21 at 56:3-7; 21-1 at 50; 22 ¶ 7. The doctor at Ortho Georgia echoed the recommendations of Macon Occupational Medicine, allowing Boatwright to return to

---

[2] In his deposition, Boatwright testified that he could not recall whether Aspen Products offered him light duty work. Doc. 21 at 88:6-9. But he did not testify and does not argue that he was not offered light duty work, and a letter Kerr sent Boatwright on July 2 documented that Boatwright had been told that "Aspen Products would accommodate any and all work restrictions according to the documentation we received from Macon Occupational." Doc. 21-1 at 54. Accordingly, this fact remains undisputed.

work with restrictions, including "no prolong[ed] standing without crutch [and] no stooping for [one] week." *Id.*

But Boatwright called in and did not go to work on his next three shifts, June 26, 29, and 30. Docs. 21 at 59:15-21, 62:1-8; 22 ¶ 8. Kerr swore in his affidavit that he called Boatwright on July 1 and told him that the absences were not excusable because light duty work was available and that Boatwright told Kerr that he wanted to go back to the doctor. Doc. 22 ¶ 8.[3] The same day, Boatwright returned to Ortho Georgia, where he was again instructed that he could return to work with the light duty restrictions, specifically, "no prolong[ed] standing with crutch [and] no stooping for [two] weeks." Docs. 21 at 62:14-17; 21-1 at 53; 22 ¶ 8. That night, Boatwright called in again and did not attend work. Doc. 22 ¶ 9.

After that latest absence, Kerr drafted a letter to Boatwright and signed it on July 2, laying out Kerr's understanding of what had happened to that point. Docs. 21 at 63:20-24; 21-1 at 54; 22 ¶ 9. Specifically, the letter stated that Boatwright had been injured on June 19, 2015, had reported for work on June 22, and had been sent to Macon Occupational Medicine on June 23; that Boatwright had been notified that Aspen Products would accommodate Boatwright's work restrictions prescribed by Macon Occupational; that Boatwright was notified that he was still scheduled to work his regular schedule; that on June 26 Boatwright requested to change doctors and was sent to Ortho Georgia and again told that Aspen Products would accommodate prescribed work restrictions; and that Boatwright had called in each day to report that he would not attend work despite these offered accommodations. Doc. 21-1 at 54. The letter also stated, "[i]t has been communicated to you at every step that your work restrictions

---

[3] Boatwright does not dispute this statement from Kerr's affidavit.

would be accommodated according to the documentation received from each visit." *Id.* And it continued, "[a]t the time of this letter, you have been unexcused from work for [seven] days to include: 6/23/15, 6/24/15, 6/25/15, 6/26/15, 6/29/15, 6/30/15 and 7/1/15." *Id.* Finally, the letter instructed Boatwright "to call Aspen Products and speak to Jay Kerr or Brian Lilly within 24 hours of receipt of this letter." *Id.* On July 2, Boatwright again called in absent and asked to pick up a paycheck. Doc. 22 ¶ 10.[4] On July 6, Kerr and Lilly decided to terminate Boatwright's employment due to his unexcused absences, which totaled nine. Doc. 22 ¶ 11. When Boatwright came to the Aspen Products plant to pick up a paycheck, Kerr and Lilly told Boatwright the decision and their reason. *Id.* They also gave Boatwright a Georgia Department of Labor form separation notice; in the place for "state fully and clearly the circumstances of the separation," they wrote, "[e]mployee has nine unexcused absences despite being released by two different doctors for restricted light duty work." Docs. 21 at 65:12-66:3; 21-1 at 55; 22 ¶ 11.

*After* his termination, Boatwright underwent an MRI and was ultimately diagnosed with a fractured, not sprained, ankle. Doc. 24-1 at 2-4. That doctor, however, also stated that Boatwright could complete light duty work but limited him to sitting, and the doctor completed a statement of disability form describing Boatwright as "totally disabled." *Id.*

On October 19, 2015, Boatwright filed a charge of employment discrimination with the Equal Employment Opportunity Commission, and the EEOC issued Boatwright a right to sue letter on September 13, 2016. Docs. 1-1 at 1; 24-5 at 6. Boatwright then

---

[4] At this point, it appears that Boatwright had not yet received the letter. *See* Doc. 21 at 59:22-60:1, 63:23-64:6 (Boatwright's deposition, noting that July 3 was a work holiday and observing that the letter was mailed July 2 but that he "probably" received it on July 6).

filed this lawsuit, claiming that Aspen Products violated his rights under the Americans with Disabilities Act by "issu[ing] an unfavorable decision . . . for nine . . . unexcused absences and by not fully accommodating [Boatwright] in reference towards [his] injury sustained on or about June 19, 2015." Doc. 1 at 3.[5]

Aspen Products now moves for summary judgment on Boatwright's claims, arguing that, as a matter of law, Boatwright (1) is not "disabled" pursuant to the ADA; (2) is not a "qualified individual" pursuant to the ADA; (3) cannot prove that Aspen Products terminated his employment for discriminatory reasons rather than legitimate, non-discriminatory reasons; and (4) cannot prove that Aspen Products failed to provide reasonable accommodation to him pursuant to the ADA. Doc. 19-1.

## II. SUMMARY JUDGMENT STANDARD

**A.    Summary Judgment Standard Generally**

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary

---

[5] Boatwright also originally pursued claims against Aspen Products plant manager Brian Lilly and production manager Jay Kerr, but those claims were dismissed on screening. Docs. 1 at 3; 5 at 3. Additionally, in his response to the motion for summary judgment, Boatwright states, "Plaintiff alleges that he was ultimately terminated based upon his disability and for his complaints of unlawful discrimination." Doc. 24 at 2. The last part of that sentence uses the language of ADA retaliation, but nowhere in his complaint or anywhere else has Boatwright alleged retaliation or stated facts that would allow a reasonable jury to return a verdict for him as to retaliation under the ADA. *See, e.g.*, 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."); *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997) (identifying the elements a plaintiff must show to establish a prima facie case of retaliation and specifying that the inquiry tracks the burden-shifting framework of *McDonnell Douglas*). Rather, Boatwright's claims are for wrongful termination and failure to accommodate under the ADA. *See generally* Doc. 1.

to the outcome of the suit. *Id.* at 248. And a factual dispute is genuine "if the evidence is such that a reasonably jury could return a verdict for the non[-]moving party." *Id.*

**B.      ADA Claims**

Pursuant to the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act of 2008, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discriminating" as prohibited by the ADA in the employment context includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

**C.      Burden-Shifting Framework for Discrimination Claims Based on Circumstantial Evidence**

Like many plaintiffs pursuing claims of employment discrimination, Boatwright does not rely on direct evidence of discrimination for his wrongful termination claim. *See generally* Docs. 1 (complaint); 24 (response to motion for summary judgment). Accordingly, the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *See Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) ("The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims." (citation omitted)). Under the *McDonnell Douglas* approach, Boatwright must first establish a prima facie case of discrimination; to establish a prima facie case, Boatwright must

prove by a preponderance of the evidence that he "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Id*. (citation omitted).[6]

If Boatwright establishes a prima facie case, a presumption of discrimination is created, and Aspen Products has the burden of articulating legitimate, non-discriminatory reasons for the termination. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (citation omitted). At this stage, Aspen Products "need not persuade the [C]ourt that it was actually motivated by the proffered reasons" but must instead produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against Boatwright. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quotation marks and citations omitted). If Aspen Products does so, Boatwright can still avoid summary judgment if he produces sufficient evidence from which a reasonable jury could conclude that Aspen Products's articulated non-discriminatory reasons are pretext for discrimination. *See Cleveland*, 369 F.3d at 1193.

### III. DISCUSSION

Because Boatwright is proceeding pro se, the Court construes his complaint and other filings liberally and in the light most favorable to him. *See Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks and citation omitted). His complaint so construed, Boatwright asserts claims against Aspen Products for violating his rights under the ADA by (1) discriminatorily terminating his employment and (2)

---

[6] The third prong should not be read to require an employee to prove the ultimate fact of discrimination in his prima facie case. *See Sneed v. Ken Edwards Enter., Inc.*, 2009 WL 10672371, at *1 (N.D. Ga.) (noting that the third prong as stated in *Hilburn* would require the plaintiff to "prov[e] his entire case as part of his prima facie case" and that "the practice of the Eleventh Circuit, if not the language of the Eleventh Circuit," requires the plaintiff to show only that an adverse employment action was taken as the third prong of the prima facie case).

- 7 -

failing to accommodate his disabilities. Doc. 1. Aspen Products argues that Boatwright's claims fail because, as a matter of law, Boatwright (1) is not "disabled" pursuant to the ADA; (2) is not a "qualified individual" pursuant to the ADA; (3) cannot show that Aspen Products terminated his employment for discriminatory reasons rather than legitimate, non-discriminatory reasons pursuant to *McDonnell Douglas*; and (4) cannot show that Aspen Products failed to reasonably accommodate his alleged disability. Docs. 19; 19-1. Because, as a matter of law, (1) Boatwright has failed to meet his burden under *McDonnell Douglas* as to the wrongful termination claim and (2) Aspen Products reasonably accommodated his alleged disability, the Court finds that summary judgment is appropriate regardless of whether Boatwright was "disabled" or a "qualified individual" pursuant to the ADA.[7]

## A. Wrongful Termination Claim

Boatwright claims that he was wrongfully terminated because of his disability, in violation of the ADA. Aspen Products claims that it terminated Boatwright's employment because of his unexcused absences. Doc. 19-1 at 1.

Indeed, Aspen Products's employee handbook, which Boatwright signed an acknowledgement of his obligation to read, stated that a "total of [six] absences or

---

[7] Accordingly, the Court assumes without deciding that Boatwright was "disabled" and a "qualified individual" pursuant to the ADA at the time of the adverse employment actions. The record suggests that Boatwright was, as a matter of law, not "disabled" because of the relatively temporary and minor nature of his injury and, if he were, he was not a "qualified individual" because his position required him to maneuver around and manipulate massive machinery. *See, e.g.*, 42 U.S.C. § 12102(1) (defining "disability" as having, having a record of, or being regarded as having a physical or mental impairment that "substantially limits one or more major life activities"); 42 U.S.C. § 12111(8) (defining "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position"); Doc. 22 at ¶¶ 3, 14 (affidavit of Aspen Products production manager Jay Kerr, swearing as to the nature of Boatwright's employment position and the danger the heavy machinery presents to employees who need crutches or wheelchairs); *but see, e.g., Lewis v. Union City*, 877 F.3d 1000, 1010 (11th Cir. 2017) ("Congress amended the ADA by enacting the ADA Amendments Act of 2008 (the 'ADAAA') with the goal of broadening the interpretation of a disability under the ADA."). But on this record, as discussed below, the grounds for summary judgment the Court chooses are simply much more definitive than these grounds.

tardiness [sic] will be subject to discipline[,] up to and including termination within a 12 month rolling calendar year." Doc. 21-1 at 15, 20. Both the letter production manager Kerr prepared and the separation notice provided to Boatwright document that Aspen Products considered Boatwright's absences to be unexcused. *Id.* at 54-55. And Kerr swore in an affidavit that Aspen Products stresses the importance of attendance in its employee policies and orientation, and that over the past three years he has "terminated approximately 100 people for violation of the attendance policy." Doc. 22 ¶ 12. Plainly, Aspen Products has stated a legitimate non-discriminatory reason to terminate Boatwright.

Accordingly, the burden shifts back to Boatwright to establish that a reasonable jury could find that Aspen Products's stated reason constitutes pretext. To establish pretext pursuant to the burden-shifting analysis, plaintiffs must point to "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [defendants'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2007) (quotation marks and citations omitted). Further, "[i]f the proffered reason is one that might motivate a reasonable employer," plaintiffs "must meet [that reason] head on and rebut it," rather than disputing the wisdom of the employer's reasoning. *Id.* at 1350 (quotation marks and citation omitted); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (stating that, in the employment discrimination context, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions," but rather their "inquiry is limited to whether the employer gave an honest explanation of its behavior" (quotation marks and citation omitted)).

Even liberally construing Boatwright's filings, it is difficult to find a cognizable argument, much less evidence from which a reasonable jury may find, that Aspen Products's stated reason was pretext. Boatwright argues that Aspen Products was fully aware of his injury but "disregarded and terminated [him] before the second treating physician had fully and thoroughly diagnosed said injury—which in fact was a severe peroneal tendonitis and a severe fracture of calcaneus" rather than a sprain. Doc. 24 at 4-5. However, whether Aspen Products knew the full extent of Boatwright's injury does not bear on whether Aspen Products's stated reason was pretext. As the letter Kerr prepared shows, Aspen Products considered Boatwright to have missed seven shifts without a valid excuse. Doc. 21-1 at 54. This total grew to nine by the time Boatwright's employment was terminated. *Id.* at 55. Boatwright has not identified any similarly-situated employees outside of his protected class who were not disciplined for comparable infractions. Indeed, Kerr swore in his affidavit that he has "terminated approximately 100 people for violation of [Aspen Products's] attendance policy" over the past three years. Doc. 22 ¶ 12. And in the employee handbook, Aspen Products explained that "[e]very employee is needed to keep the plant running smoothly and your absences cause hardship to your fellow employees who must cover your position as well as their own," specified how to excuse absences, and noted that a "total of [six] absences or tardiness [sic] will be subject to discipline[,] up to and including termination within a 12 month rolling calendar year." Doc. 21-1 at 15, 19-20. In sum, Aspen Products has shown that it took absences seriously and that Boatwright had what it considered to be nine consecutive unexcused absences, and Boatwright has failed to establish "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Aspen Products's] proffered legitimate reasons for its actions that a

reasonable factfinder could find them unworthy of credence" to survive summary judgment. *Springer*, 509 F.3d at 1348-49 (quotation marks and citation omitted).

**B.      Failure to Accommodate Claim**

Boatwright also claims that Aspen Products violated his rights under the ADA by failing to reasonably accommodate his disability. Boatwright complains that he was never granted unpaid medical leave, and in his deposition he testified that he requested to return to his machine operator job with crutches but was denied this accommodation. Docs. 21 at 28:18-22, 29:2-12, 30:8-16; 24 at 3.

But "[t]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)). An employer is not required to grant the accommodation of an employee's choice, or "the maximum accommodation or every conceivable accommodation possible"—merely a "reasonable" one. *Stewart*, 117 F.3d at 1285-86 (quotation marks and citations omitted). An accommodation is "reasonable" if it allows the employee to perform the essential functions of the job. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259-60 (11th Cir. 2001) (citations omitted).

Aspen Products offered to reasonably accommodate Boatwright. Aspen Products has set forth uncontroverted evidence that it instructed Boatwright that light duty work would be available for him in the form of modified duties at a chair and table, including counting, inventorying, or inspecting product. Doc. 22 ¶¶ 13-14. That work would have conformed with the doctors' orders that Boatwright avoid lifting, pushing, pulling, carrying, walking or standing for more than 20 minutes at a time, or going long periods without icing and elevating his injured ankle; the work would have even

conformed with the orders to only work while seated, which Boatwright received after his MRI and which Aspen Products could not have known. Doc. 21-1 at 49-50; 24-1 at 2-4. And Kerr swore in an affidavit that he "would approximate at least 20 different instances" of Aspen Products granting work accommodations of various kinds during his seven-year tenure. Doc. 22 ¶¶ 2, 15. Accordingly, Aspen Products, as a matter of law, did not fail to reasonably accommodate Boatwright.[8]

Boatwright also testified in his deposition that on or around July 13 he "verbally talked to [Aspen Products] on his cell phone and asked them could I come back and perform" in an accommodated role. Doc. 21 at 32:19-33:17. But by that point Boatwright had already been dismissed from his job and replaced because of his unexcused absences, and Aspen Products no longer had a duty to accommodate. When Aspen Products did have a duty to accommodate, it offered a reasonable accommodation to Boatwright. Boatwright did not accept the accommodation. Accordingly, summary judgment is required on his failure to accommodate claims.

## IV. CONCLUSION

For the reasons discussed above, the motion (Doc. 19) is **GRANTED**. Boatwright's claims are accordingly **DISMISSED with prejudice**.

**SO ORDERED**, this 18th day of June, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[8] The record also suggests that Boatwright's preferred accommodations would have been unnecessary or problematic. Unpaid leave is sometimes required as a reasonable accommodation for an employee with a disability. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1263 (11th Cir. 2007) (noting that sometimes employers must modify leave policies as a form of accommodation). But, even assuming that Boatwright was a qualified individual with a disability, all three doctors prescribed light work duty, not unpaid leave. Docs. 21-1 at 49-50; 24-1 at 2-4. As for Boatwright's other proposed accommodation, operating the machine with his crutches, it is the uncontroverted sworn testimony of Kerr that operating heavy machinery with crutches was unsafe and that the light duty work was available because of such safety concerns. Doc. 22 ¶ 14.